UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEYJUAN LAMAR ALEXANDER,

               Plaintiff,

v.

UNKNOWN TIKKANEN et al.,

               Defendants.

_____/

Case No. 2:24-cv-196

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 4).

**Discussion**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP personnel in their official and personal capacities: Prison Counselor Unknown Lebeaf, Captain Unknown Sebaly, Sergeants Unknown Tikkanen and Unknown Mankee, and Corrections Officer Unknown Ruperd. (Compl., ECF No. 1, PageID.14.)

Plaintiff alleges that on August 18, 2024, another prisoner threw feces and urine into Plaintiff's cell through a hole in the wall. (*Id.*, PageID.15.) It stayed on the floor for six hours. (*Id.*) Plaintiff contends that Defendant Ruperd made him eat his food "with feces and urine still on the floor." (*Id.*) Later that evening, a porter cleaned up the mess "without proper cleaning suppl[ies]." (*Id.*) Plaintiff informed "the porter and C/O they have to clean the hole and disinfect both the floor and hole in the wall." (*Id.*) According to Plaintiff, the C/O said, "that's too much work." (*Id.*) Plaintiff asked to speak to shift command, but his request was denied. (*Id.*) Plaintiff alleges that flies began to appear the next day, and that he was in a fly-infested cell for three weeks. (*Id.*)

Based upon the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, as well as violations of MDOC Policy Directives 02.03.109 and 03.03.130. (*Id.*) Plaintiff seeks "compensation." (*Id.*, PageID.16.)

### II.    Motion to Appoint Counsel

As noted above, Plaintiff has filed a motion to appoint counsel to represent him in this matter. (ECF No. 4.) Plaintiff alleges that his imprisonment "will greatly limit his ability to litigate this case," and that this matter "will likely involve substantial investigation and discovery." (*Id.*,

PageID.22.) Plaintiff states further that a lawyer would be able to assist in "in the presentation of evidence and the cross[-]examination of opposing witnesses." (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 4) will, therefore, be denied.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and personal capacities. (Compl., ECF No. 1, PageID.14.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).

Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks "compensation." (Compl., ECF No. 1, PageID.16.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

### B.  Personal Capacity Claims

#### 1.  Defendants Tikkanen, Mankee, Sebaly, and Lebeaf

Plaintiff fails to name Defendants Tikkanen, Mankee, Sebaly, and Lebeaf in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants

were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff fails to even mention Defendants Tikkanen, Mankee, Sebaly, and Lebeaf in the body of his complaint, his allegations against them fall far short of the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Defendants Tikkanen, Mankee, Sebaly, and Lebeaf are properly dismissed from this action.

### 2. Defendant Ruperd

#### a. Eighth Amendment

Plaintiff suggests that Defendant Ruperd violated his Eighth Amendment rights by failing to ensure that the urine and feces that were thrown into Plaintiff's cell were properly cleaned up and disinfected. (Compl., ECF No. 1, PageID.15.) Plaintiff also appears to suggest that Defendant Ruperd failed to ensure that the mess was cleaned up in a timely manner and instead forced Plaintiff to eat his food with the mess on the floor. (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent

of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020), the United States Supreme Court addressed a situation where the plaintiff-prisoner was confined in a cell that was covered, nearly floor to ceiling, in large amounts of feces, including all over the floor, the ceiling, the window, the walls, and even in the water faucet, to the extent that the prisoner did not eat or drink for four days because of fear his food would be contaminated. Correctional officers then moved the plaintiff to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes, prompting the plaintiff to hold his bladder for over 24 hours before involuntarily relieving himself, causing the drain to overflow and raw sewage to spill across the floor. The cell also lacked a bunk, and because the plaintiff was confined without clothing, he was left to sleep naked in sewage. *Id.* The Court noted that the plaintiff was subjected to these conditions for a total of six days and concluded that this was sufficient to support a claim under the Eighth Amendment and to overcome the defendants' claim for qualified immunity. *Id.* at 8.

In contrast, allegations amounting to relatively minor and temporary inconveniences do not rise to the level of an Eighth Amendment violation. *See Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration" (emphasis in original; further internal quotations omitted)).

Moreover, the Court notes:

> [W]hile "massive amounts" of feces pose a more obvious risk, the more garden-variety sanitation issues that Plaintiff alleges in combination with the absence of any allegation of physical injury also supports the conclusion that Plaintiff was not exposed to a substantial risk of serious harm.[6] *See, e.g.*, *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but did not allege he suffered any harm); *Goforth v. Sumner County*, 2013 WL 1943020 at *3 (M.D. Tenn. May 9, 2013) (confinement in cell with door covered with feces failed to state claim under 8th Amendment where plaintiff did not allege he became ill or suffered actual injury).

*Edge v. Mahlman*, No. 1:20-CV-892, 2021 WL 3725988, at *6 (S.D. Ohio Aug. 23, 2021), *report and recommendation adopted,* No. 1:20-CV-892, 2022 WL 20113138 (S.D. Ohio Mar. 18, 2022).

Here, Plaintiff alleges that the urine and feces remained on the floor of his cell for six hours before it was cleaned up. He contends that at some unspecified time during this period, he had to eat his food while the mess was still on the floor. With respect to Defendant Ruperd's involvement in the matter, the factual allegations in the complaint show only that Ruperd was involved in making Plaintiff eat in his cell while "feces and urine [were] still on the floor." (Compl., ECF No. 1, PageID.15.) Plaintiff avers that later, when the mess was cleaned up, it was not cleaned properly, and the odor attracted flies that were in his cell for three weeks.

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001))). While unpleasant, the conditions that Plaintiff describes do not rise to the level of the conditions described in *Taylor*. Plaintiff does not allege any facts suggesting that he was injured as a result of the six-hour exposure to the urine and feces. *See Lamb*, 677 F.

App'x at 209–10 (discussing that inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding that there was no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (finding that deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours).

Furthermore, although Plaintiff contends that the lingering odor attracted flies to his cell over a period of three weeks, Plaintiff fails to allege any serious harm from the flies. The fact that Plaintiff suffered flies in his cell for three weeks falls far short of demonstrating "conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348; *see also Brooks v. Daniels*, No. 3:12CV-P446-S, 2012 WL 3866453, at *2 (W.D. Ky. Nov. 19, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measures of life's necessities."); *Williams v. Philips*, No. 1:10-cv-131, 2012 WL 370749, at *7 (E.D. Cal. Aug. 27, 2012) (holding that mere presence of annoying insects does not rise to an Eighth Amendment violation and stating that "Plaintiff is not living at the Ritz; he is in prison and the burden of swatting 10 or even 25 flies per day is not cruel and unusual punishment."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (holding that the allegation that a prisoner's cell is "infested with 'cockroaches, spiders, worms, [g]nats, mice and other unknown insects'" fall short of demonstrating the existence of a substantial risk of serious harm). And, notably, Plaintiff alleges no facts suggesting that Defendant Ruperd was involved in, or aware of, Plaintiff's conditions of confinement during the three-week period following the initial interaction between Ruperd and Plaintiff where Plaintiff ate in his cell.

10

Accordingly, for all of these reasons, Plaintiff's allegations fall short of alleging an Eighth Amendment violation, and his Eighth Amendment claim against Defendant Ruperd will be dismissed.

### b.    Violation of MDOC Policy Directives

Plaintiff also suggests that Defendant Ruperd's actions violated MDOC Policy Directives 02.03.109 and 03.03.130. (Compl., ECF No. 1, PageID.15.) The Court will liberally construe these references as an attempt to assert claims under § 1983 for the violation of MDOC policy. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendant Ruperd violated MDOC policy fails to state a claim under § 1983.

Furthermore, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendant Ruperd violated MDOC policy fails to raise a cognizable federal claim, and Plaintiff's § 1983 claims regarding the violation of policy will be dismissed.

### <u>Conclusion</u>

The Court will deny Plaintiff's motion to appoint counsel (ECF No. 4) for the reasons set forth above. Moreover, having conducted the review required by the PLRA, the Court determines

that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  March 19, 2025                    /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge